## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:11CV-00101-JHM**

**RUSSELL NOBLE**                                                  **PLAINTIFF**

**AND**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**      **INTERVENING PLAINTIFF**

**VS.**

**J.B. HUNT TRANSPORT, INC.**                                  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff, Russell Noble, for summary judgment/declaratory judgment relating to the intervening claim of Liberty Mutual Fire Insurance Company on behalf of Nationwide Express, Inc. [DN 22]. Intervening Plaintiff, Liberty Mutual Fire Insurance Company, filed a response to the motion for summary judgment and also requested the Court issue a declaration regarding the applicability and enforceability of Liberty Mutual's subrogation lien in favor of Liberty Mutual. Plaintiff filed no reply. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

On July 1, 2009, Plaintiff, Russell Noble ("Noble"), was operating a semi tractor-trailer owned by his employer, Nationwide Express, Inc. ("Nationwide"), on Interstate 65 in Hart County, Kentucky. Plaintiff's tractor-trailer was struck from behind by a J.B. Hunt Transport, Inc. ("J.B. Hunt") tractor-trailer which was operated by Randall E. Mitchell. Mitchell was killed as a result of the collision. The force of the collision knocked Noble forward in his seat.

Noble filed a workers' compensation claim under Tennessee law against Nationwide as a

result of the accident. Intervening Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), was the workers' compensation carrier for Nationwide. On March 3, 2011, Liberty Mutual paid workers' compensation benefits to Plaintiff in the amount of $122,615.00 for disability benefits and $4,069.06 for medical benefits. (Andrew Marley Aff. at ¶7.)

During the pendency of his underlying workers' compensation case, Noble filed a civil action in Hart Circuit Court against Defendant, J.B. Hunt, seeking to recover money damages for the damages he sustained in the collision. The action was removed to this Court. Liberty Mutual filed an intervening complaint in this case alleging that "[p]ursuant to Tenn. Code Ann. § 50-6-112, the intervening plaintiff is entitled to recover from the defendants all sums not to exceed the indemnity and medical benefits paid and payable to or on behalf of Russell Noble under the workers' compensation policy . . ." (Intervening Complaint ¶ 7.) Liberty Mutual further alleged that "[t]o the extent that any damages recovered by Russell Noble in this proceeding are duplicative of any workers' compensation benefits he has received or will receive in the future from the intervening plaintiff, the intervening plaintiff is entitled to reimbursement from the plaintiff of the sums it has expended as workers' compensation benefits . . . . " (Intervening Complaint, Cross-Claim ¶ 3.)

J.B. Hunt moved this Court for summary judgment based upon the "impact rule." The Court granted summary judgment in part finding that while there is sufficient evidence to show that Noble was impacted by the collision, "he may not recover damages under Kentucky law for the emotional distress he may have suffered as a result of witnessing the fatal injuries of the other driver." (October 18, 2011, Order at 2, DN 11.) The Court further held that "Plaintiff may recover for mental anguish which he can relate to the contact or injury he suffered in the accident." (Id. at 4.)

On February 10, 2012, Noble entered into a settlement agreement with Defendant, J.B. Hunt, in which Noble received the sum of $30,000 in exchange for the release and dismissal of the claims against J.B. Hunt. On February 24, 2012, Liberty Mutual made a demand upon Plaintiff pursuant to T.C.A. § 50-6-112 regarding its subrogation lien against the settlement proceeds. Liberty Mutual does not dispute Plaintiff's right to offset for attorney's fees and court costs. As a result of this demand, Plaintiff filed this current motion for summary judgment/declaration of rights regarding the settlement proceeds.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will

3

be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

In support of his motion for summary judgment, Noble argues that Liberty Mutual is not entitled to any of the settlement proceeds received by him from J.B. Hunt. According to Noble, Liberty Mutual intervened in this case seeking to recover monies which were duplicative of monies paid to Noble in the Tennessee workers' compensation case which arose out of the July 2009 collision. In support of his motion, Noble submits a document filed in his Tennessee workers' compensation claim entitled "Workers Compensation - First Report of Injury or Illness." The document that was prepared by the Human Resource Department at Nationwide reflects that the type of injury/illness claimed was "mental stress;" the part of body affected was "no physical injury;" all equipment, materials, or chemicals employee was using when accident or illness exposure occurred was "seeing dead bod[sic];" and the initial treatment was "no medical treatment." (Workers Compensation - First Report of Injury or Illness, DN 22-1.) Noble contends that this document clearly reflects that all monies paid to him as a result of the Tennessee workers' compensation claim relate to "mental stress" which arose as a result of Noble witnessing the fatal injuries to the other driver. Since those claims were dismissed by the Court prior to the tort claim settlement, Noble argues that Liberty Mutual may not claim that the settlement paid by J.B. Hunt duplicates any payment made to Noble in the Tennessee workers' compensation case. Finally, Plaintiff contends that the First Report of Injury or Illness document is consistent with the sworn statement of Noble in which he states that he received no physical injury as a result of the collision.

In response to the motion for summary judgment, Liberty Mutual argues that because Noble

4

obtained a recovery against J.B. Hunt, Liberty Mutual's intervention and assertion of its lien against the settlement proceeds is lawful and proper under Tennessee law pursuant to T.C.A. § 50-6-112(c). Liberty Mutual requests the Court to issue a declaration regarding the validity of the subrogation lien and to issue a judgment in favor of Liberty Mutual in the amount of the net settlement proceeds recovered by Noble from J.B. Hunt, less appropriate attorney's fees and expenses.

### A. Choice of Law

Tennessee law applies to Liberty Mutual's claim for reimbursement of the worker's compensation benefits paid to Noble. "Subrogation claims are considered contract cases for choice-of-law purposes, and Kentucky's choice-of-law rule requires application of [Tennessee] law." Miller Truck Lines, LLC v. Central Refrigerated Services, Inc., 781 F. Supp. 2d 488, 491 (W.D. Ky. 2011). See also Crete Carrier Corp. v. Barrow, 2008 WL 901912 (Ky. Ct. App. April 4, 2008); Employer's Liability Corp. v. Webb, 140 S.W.2d 825 (Ky. 1940). In the present case, Noble sought and obtained workers' compensation benefits under Tennessee law. Therefore, in the present case, any claims against Noble for reimbursement of the benefits paid should be governed by the law of the state under which the benefits were awarded. Id.

### B. Subrogation Lien

T.C.A. § 50–6–112(a) permits an injured employee who receives workers' compensation benefits to pursue an action against the third party tortfeasor who caused or contributed in causing the employee's injury. The employer who paid the workers' compensation benefits to a plaintiff is given a statutory subrogation lien on any recovery by the employee from the tortfeasor, and the employer may intervene in any action to protect and enforce such lien. Santander v. Lopez, 2010 WL 1172531, *5 (Tenn. Ct. App. March 24, 2010)(citing T.C.A. § 50-6-112(c)(1)). T.C.A. §

5

50–6–112(c) provides in relevant part:

> (1) In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien.
>
> (2) In the event the net recovery by the worker, or by those to whom the worker's right of action survives, exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

Tenn. Code Ann. § 50–6–112(c). Under Tennessee law, "[i]n order to prevent a double recovery, a subrogation lien attaches against the employee's net recovery by 'judgment, settlement or otherwise' from the third party." Carter v. Phoenix Restaurant Group of Tennessee, Inc., 1997 WL 26296, *4 (Tenn. 1997). "Whether the employee 'has or has not been made whole' is not relevant, since the statutory scheme plainly provides that the employer shall be subrogated to the net recovery." Id. (citing Beam v. Maryland Cas. Co., 477 S.W.2d 510 (Tenn. 1972); Royal Indem. Co. v. Schmid, 474 S.W.2d 647 (Tenn.1971)).

It is undisputed that Nationwide, and its workers' compensation insurance carrier, Liberty Mutual, reached a settlement with Noble of his workers' compensation claim arising from the July 1, 2009, accident and that a final order approving the settlement was entered in the workers' compensation case on March 3, 2011. It is further undisputed that the accident and injury giving rise to the workers' compensation suit and resulting settlement were the same accident and injury that are the subject of the current tort suit. Therefore, under these circumstances, T.C.A. § 50-6-112 provides that Nationwide, through its carrier Liberty Mutual, has a statutory right to a subrogation

lien against the recovery, if any, made by Noble against J.B. Hunt in the tort action. Santander, 2010 WL 1172531, *6; see T.C.A. § 50-6-112(c).

The Court rejects Noble's attempt to characterize his workers' compensation settlement as solely limited to the mental stress which arose as a result of Noble witnessing the fatal injuries to the other driver. The initial workers' compensation claim form is not indicative of the injuries compensated by the workers' compensation settlement. In fact, throughout this litigation and the pending workers' compensation claim, Plaintiff represented to this Court that he suffered both a physical injury to his neck and mental pain and suffering from both his physical injury and from watching Mitchell's death. (See Complaint ¶ VIII; Response to Motion to Dismiss at 5, DN 7.) Furthermore, the only evidence in the record regarding the workers' compensation settlement was that the payments made by Liberty Mutual included the following:

| | |
|---|---|
| Permanent Partial Disability: | $104,260.35 |
| Temporary Total Disability : | $ 12,369.96 |
| Temporary Partial Disability: | $ 5,984.69 |
| Total Indemnity | $122,615.00 |
| Total Medical Benefits | $ 4,069.06 |

(Andrew Marley Affidavit ¶ 7.) Thus, the record does not indicate that the workers' compensation settlement related solely to Noble's mental distress suffered as a result of the death of the other driver.

Regardless, Noble provides no authority in support of his argument that Tennessee law limits a workers' compensation subrogation lien to only the settlement proceeds which are duplicative of the compensation received under workers' compensation. Instead, under T.C.A. § 50-6-112(c), "the subrogation lien attaches to any recovery from the tortfeasor 'by judgment, settlement or otherwise.'" Graves v. Cocke County, 24 S.W.3d 285, 289 (Tenn. 2000)(emphasis added)(quoting

Castleman v. Ross Engineering, Inc., 958 S.W.2d 720 (Tenn. 1997)); Heggie v. Cumberland Electric Membership Corporation, 790 S.W.2d 284, 287 (Tenn. Ct. App. 1990)(Tenn. Code Ann. § 50-6-112(c) "clearly obligates the employee to repay the employer all compensation advanced and to credit any future compensation due, up to the full amount of the proceeds of any settlement."(citation omitted)). "The legislative intent [of § 50-6-112(c)] is to reimburse an employer for payments made under a Workman's Compensation award from 'the [net] recovery' obtained by the employee . . . to the extent of the employer's total obligation under the Compensation Act." Beam, 477 S.W.2d at 513.

For these reasons, the Court declares that pursuant to T.C.A. § 50-6-112(c)(1), Liberty Mutual has a valid and enforceable subrogation lien against the net settlement proceeds.

### C. Attorney's Fees

The Tennessee Workers' Compensation Act provides that a plaintiff's attorney is to be paid a reasonable fee for his services. Specifically, T.C.A. § 50-6-112(b) provides:

> In the event of a recovery from the other person by the worker, or those to whom the worker's right of action survives, by judgment, settlement or otherwise, the attorney representing the injured worker, or those to whom the injured worker's right of action survives, and effecting the recovery, shall be entitled to a reasonable fee for the attorney's services, and the attorney shall have a first lien for the fees against the recovery. . . .

"Once the fees and litigation expenses are satisfied, the employer/carrier's subrogation claim . . . is deducted from the remainder." Morton v. University of Tennessee at Knoxville, 1993 WL 360451, *1 (Tenn. Ct. App. Sept. 17, 1993); Morton v. University of Tennessee at Knoxville, 1995 WL 314465, *1 (Tenn. 1995). In the present case, Plaintiff's counsel represents that his claim for fees and expenses is $11,347.50. Plaintiff's counsel has filed no documentation regarding the reasonableness of the fees. Thus, Plaintiff's counsel shall submit proof within 20 days of the entry

of this Order regarding Plaintiff's attorney's fees and expenses incurred in the settlement of his claims against Defendant, J.B. Hunt.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff, Russell Noble, for summary judgment [DN 22] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court finds in favor of Intervening Plaintiff, Liberty Mutual, on its cross-claim against Noble.  Pursuant to T.C.A. § 50-6-112(c)(1), Liberty Mutual has a valid and enforceable subrogation lien against the net settlement proceeds recovered by Noble against J.B. Hunt, less appropriate attorney's fees and cost.  Once the amount of attorney's fees and expenses are determined, a Judgment will be entered in favor of Liberty Mutual pursuant to this Memorandum Opinion.

**IT IS FURTHER ORDERED** that Plaintiff's counsel shall submit proof within 20 days of the entry of this Order regarding Plaintiff's attorney's fees and expenses incurred in the settlement of his claims against Defendant, J.B. Hunt.  If Liberty Mutual objects to the reasonableness of Plaintiff's attorney's fees and expenses, Liberty Mutual shall file a notice of objection in the record within 10 days of Plaintiff's submission.  Plaintiff may file a response to the notice of objection within five (5) days of Liberty Mutual's notice of objection.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

June 21, 2012